GREENLEAF v. NATIONAL ASS'N OF RY. POSTAL CLERKS.

(Circuit Court, D. Maine. May 26, 1904.)

No. 49.

1. INSURANCE—FOREIGN ASSOCIATIONS—STATE LAWS—APPLICATION.

Rev. St. Me. c. 49, § 79, provides that no foreign insurance company shall transact insurance business within the state without a license from the Insurance Commissioner; sections 80–84 provide for the issuance of such license; and section 92 declares that any person having a claim against any foreign insurance company may bring an appropriate suit thereon in the courts of the state, and that process may be served on the Insurance Commissioner or on any duly appointed. agent of the company

within the state. *Held*, that section 92 applies only to foreign insurance companies which have complied with the statutes and obtained a license to do business in the state.

2. FEDERAL COURTS—REMOVAL OF CAUSES—MOTION TO DISMISS—APPEARANCE.
Where a foreign insurance association, after suit brought in the state court, took seasonable steps to have the same removed to the federal court, it was entitled after such removal to appear specially for the purpose of moving to dismiss on the ground that the court had not obtained jurisdiction of defendant's person.

At Law.

Levi Greenleaf, for plaintiff.
Samuel W. Emery, for defendant.

HALE, District Judge. Annie S. Greenleaf, of Portland, Me., a citizen of Maine, commenced suit in the Supreme Judicial Court in the county of Cumberland and state of Maine, at the October term, 1903, against the National Association of Railway Postal Clerks, incorporated under the laws of the state of New Hampshire, to recover the sum of $5,000, alleged to be due from said association to the plaintiff under a certain beneficiary fund certificate set forth in the declaration. The writ was served by delivery to S. W. Carr, State Insurance Commissioner, of a summons and attested copy of the writ. On the second day of said term of court (the 14th day of October, 1903), defendant filed its petition and bond for removal in that court; and on that day an order was issued removing the cause to the Circuit Court of the United States for the District of Maine, and directing the transmission of the transcript of the record. The petition alleged that the matter in dispute exceeded the sum of $2,000, exclusive of interest and costs, and that the controversy was between citizens of different states; that the petitioner was at the time of the commencement of the suit, and still is, a corporation duly incorporated, organized and doing business under the laws of the state of New Hampshire, and a resident and citizen of the State of New Hampshire, and the plaintiff was then, and still is, a citizen of the state of Maine, and a resident of Portland, in said state of Maine. The record was duly filed in the Circuit Court of the United States for the District of Maine on the first day of the April term of said court, when said suit was entered in the said Circuit Court of the United States for the District of Maine, to wit, April 19, 1904, on which said day the defendant filed a motion to set aside the service of the plaintiff's writ in the case, and to dismiss the writ and the plaintiff's action, for want of jurisdiction of the person of the defendant in the state court from which the cause was removed. The defendant offered, with his motion, the affidavit of George A. Wood, the treasurer and secretary of the defendant corporation, which affidavit shows that the corporation carries on no business in the state of Maine, and has no agents in said state; that all policies are issued in the state of New Hampshire, and mailed to the applicant in the state of Maine, or in whatever state the applicant resides; that assessments are received in Maine for the convenience of members; that each member of the

¶ 2. See Appearance, vol. 3, Cent. Dig. 135; Removal of Causes, vol. 42. Cent. Dig. § 238.

society may remit assessments direct to the secretary at Portsmouth, N. H., or, in case it is more convenient for such member to pay a local member of the association, there are two members of the association, who are residents of Maine, authorized to accept payments. The two members in Maine so receiving assessments have authority to perform no other act whatever for the association. The association has no person who acts as its agent in the state of Maine, unless the two aforesaid persons should be held to be such agents. The association never has procured license to do business in the state of Maine, because it has not supposed that it is doing an insurance business for the doing of which a license must be procured of the Insurance Commissioner of Maine; and it never has appointed the Insurance Commissioner of Maine, or any other person in that state, its attorney or agent to receive or accept service of any process against it. The affiant has appended to his affidavit a copy of the constitution of the association, in which, in article 2, it is alleged:

"The object of this association is to conduct the business of a fraternal beneficiary association for the sole benefit of its members and beneficiaries and not for profit; to provide closer social relationship among railway postal clerks; * * * to provide relief for its members and their beneficiaries and make provision for the payment of benefits to them, in case of death, sickness, temporary or permanent physical disability, either as a result of disease, accident or old age."

Section 79 of chapter 49 of the Revised Statutes of Maine provides that "no foreign insurance company shall transact any insurance business in the state unless it first obtain a license from the commissioner." Section 80 provides that foreign insurance companies shall not be licensed to do business in the state until they have complied with all the provisions of law relating to the admission of companies, and have also made a deposit with the treasurer in a sum not less than the capital or assets of like companies existing under the laws of other states. Section 81 provides that all the real estate and other assets of any such company shall be held by trustees for the benefit of creditors. Section 82 provides that when such foreign insurance company has complied with the foregoing provisions, and the Insurance Commissioner is satisfied that it is solvent, he may issue to it a license to transact business in the state. Section 83 provides for reciprocal provisions upon all insurance companies doing business in the state, or applying for admission to it. Section 84 provides that the Insurance Commissioner may revoke the license of any foreign insurance company authorized to do business in the state which shall neglect to comply with the laws of the state or shall violate certain provisions of the statutes. Section 92 provides as follows:

"Any person having a claim against any foreign insurance company may bring a trustee action or any other appropriate suit therefor in the courts of this state. Service made upon the Insurance Commissioner or upon any duly appointed agent of the company within the state shall be deemed sufficient service upon the company."

It is contended by the plaintiff in the case before us that the provisions of section 92 which we have just quoted permit service upon the company by leaving a copy of the writ with the Insurance Commissioner, and that this provision applies even though the company has

not obtained license to do business within the state, and has not complied with the foregoing statutes which we have cited, and all other statutes on the subject. If section 92 were read alone, without reference to other sections of the chapter, there might be good ground for the contention of the plaintiff; but the intention of the Legislature must be ascertained by a careful examination of the whole statute, and not alone by a reference to any one section. It is clear from the citations which we have just made from the statute that the Legislature is passing upon the rights of companies who have applied for admission into the state, and have complied with its laws. It is plain that section 92 was not intended to apply to any foreign insurance company, whether it had been licensed to do business in this state or not. It can readily be seen that, if the contention of the plaintiff were allowed to prevail, the utmost uncertainty would result in reference to the service of writs upon companies having no standing whatever in the state. Great opportunities of collusion might also arise from such construction. In fact, such construction might well be held to be open to the objection of being inconsistent with the fourteenth amendment of the Constitution of the United States, for, if this statute were allowed so wide an application as contended for by the plaintiff, it might be held to abridge the rights of certain foreign corporations which are "citizens of the United States." We therefore have no hesitation in concluding that the provision of section 92 can apply only to foreign insurance companies which have complied with the statutes, and have obtained license to do business in the state.

The learned counsel for the plaintiff further contends that the objection to the jurisdiction of the person should have been raised in the state court on one of the first two days of the term at which the writ was entered, and that, by not appearing in the state court and making a timely motion to dismiss, defendant has waived his rights to move for a dismissal of the writ on the ground that the court had not jurisdiction of the person of the defendant. The Supreme Court has already passed upon this question in Wabash Western Railway v. Brow, 164 U. S. 271, 17 Sup. Ct. 126, 41 L. Ed. 431. Chief Justice Fuller, speaking for the court, at page 278, 164 U. S., page 128, 17 Sup. Ct., 41 L. Ed. 431, says:

"An appearance which waives the objection of jurisdiction over the person is a voluntary appearance, and this may be effected in many ways, and sometimes may result from the act of the defendant even when not in fact intended. But the right of the defendant to a removal is a statutory one, and he is obliged to pursue the course pointed out, and when he confines himself to the enforcement of that right in the manner prescribed, he ought not to be held thereby to have voluntarily waived any other right he possesses. An acknowledged right cannot be forfeited by pursuit of the means the law affords of asserting that right. Bank v. Slocomb, 14 Pet. 60, 65 [10 L. Ed. 354]. The statute does not require the removing party to raise the question of jurisdiction over his person in the state court before removing the cause, or to reserve that question in respect of a court which is to lose any power to deal with it; and to decide that the presentation of the petition and bond is a waiver of the objection would be to place a limitation upon the jurisdiction of the Circuit Court which is wholly inconsistent with the act."

In the case before us, learned counsel for the defendant appeared specially for the sole purpose of making his motion to dismiss. He has

complied with the terms of the statute in obtaining the removal of the cause, and he is seasonable in applying for a dismissal of the suit on the ground that the court had no jurisdiction over the person of the defendant. The language of Chief Justice Fuller applies distinctly to the case at bar:

"The statute does not require the removing party to raise the question of jurisdiction over his person in the state court before removing the cause, or to reserve that question in respect of a court which is to lose any power to deal with it."

It is ordered that the writ be dismissed.